**Robert Lee NORRIS,**
**Petitioner–Appellant,**

**v.**

**Henry RISLEY, Warden,**
**Respondent–Appellee.**

**No. 87–4280.**

United States Court of Appeals,
Ninth Circuit.

Originally Decided June 30, 1989.

Reopened Aug. 7, 1990.

Resubmitted Sept. 27, 1990.

Decided Nov. 8, 1990.

Robert Lee Norris, Deer Lodge, Mont., in pro per.

Paul D. Johnson, Asst. Atty. Gen., Helena, Mont., for respondent-appellee.

Before: PREGERSON, BOOCHEVER and NOONAN, Circuit Judges.

BOOCHEVER, Circuit Judge:

In this appeal we must decide whether the presence of spectators wearing buttons inscribed with the words "Women Against Rape" at Robert Lee Norris's trial for kidnapping and sexual intercourse without consent deprived him of a fair trial.

## I. BACKGROUND

Norris, an inmate at Montana State Prison, is currently serving a ninety-year sentence after his conviction for kidnapping and sexual intercourse without consent. On appeal the Montana Supreme Court affirmed the conviction. *State v. Norris,* 212 Mont. 427, 689 P.2d 243 (1984). Having exhausted all state remedies, Norris petitioned the United States District Court for the District of Montana for habeas corpus relief pursuant to 28 U.S.C. § 2254 (1988).

Specifically, Norris contended that jurors were in the presence of a large number of women wearing "Women Against Rape" buttons in the public elevators, in the courtroom, on their way to and from the courtroom, and that the women served refreshments outside the courtroom on behalf of the state. After the jury had been selected, Norris moved to exclude the women from the courtroom during the trial, or to prevent them from wearing the buttons. The state trial court denied the motion:

> Well, I'm compelled to deny your motion, because the public is entitled to attend court proceedings up to the point where the Court is absolutely satisfied that there is some imminent threat involved. And certainly the Rape Task Force ladies and personnel are not known for imminent threat to anybody's life.
>
> . . . .
>
> Well, we do have First Amendment rights that are involved. And I don't feel that I can grant that. As long as it is an expression that is announced peacefully—And certainly a button would do that—I think I have no basis for granting the motion.

In his habeas petition, Norris claimed that, by denying his motion to prohibit the wearing of the buttons by the women during his trial, the state court infringed his right to a fair trial.

Although the trial record contains no findings concerning the presence of these allegedly offending factors or, consequently, their impact on a fair trial, the United States District Court denied the petition for a writ of habeas corpus without an evidentiary hearing. Norris appealed the denial. Finding that, if Norris's allegations were true, his right to a fair trial was compromised, we reversed and remanded, instructing the district court to hold an evidentiary hearing to determine the accuracy of Norris's allegations. *Norris v. Risley,* 878 F.2d 1178, 1183 (9th Cir.1989). Our order further stated:

> If the women were present in some lesser number than that alleged by Norris, the district court should determine whether Norris was denied a fair trial. Relevant factors to be considered would include the number of women, the visibility of the buttons, whether the jurors passed through the women as they entered and exited the courtroom, and whether the women were serving refreshments in view of the jurors, thus giving the apparent imprimatur of the state to the women's presence.

*Id.*

On July 11, 1990, the district court issued its findings of facts and conclusions of law. The court found that approximately fifteen members of the Billings Rape Task Force

and the National Organization for Women wore "Women Against Rape" buttons during Norris's second arraignment and that some women wore the buttons during trial. The court described the buttons as two and one-half inches in diameter with the word "Rape" underlined with a broad red stroke. After listening to divergent accounts about the jurors' exposure to the buttons, the court made detailed findings. We summarize below those that we consider material.

Pursuant to our instruction that, upon finding that fewer than twenty spectators wore buttons it should determine the impact on Norris's fair trial rights, the court concluded that the "environing atmosphere" both inside and outside the courtroom did not pose an unacceptable risk of prejudicing the jury against Norris. Thus, the court concluded that Norris' right to a fair trial was not infringed.

Norris filed with this court an objection to the judge's findings which we treated as a motion to reinstate the appeal. After granting the motion, we issued an order requesting the simultaneous filing of briefs on the question of whether, under the facts found by the district court, Norris was denied a fair trial. We now find that he was.

## II. STANDARD OF REVIEW

We review the district court's findings of fact for clear error. *United States v. McConney*, 728 F.2d 1195, 1200 & n. 5 (9th Cir.) (*en banc*), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The district court carefully made detailed findings of fact. We hold that these findings are not clearly erroneous.

■ Whether those facts constitute a deprivation of Norris's right to a fair trial involves a mixed question. Mixed questions are ordinarily reviewed *de novo* because the "application of law to fact will require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles." *Id.* at 1202. This is especially so where, as here, the mixed question implicates constitutional rights. *Id.* at 1203. Because Norris's right to a fair trial is of constitutional

dimension, we review *de novo* the district court's conclusion that Norris was not deprived of the right to a fair trial.

## III. DISCUSSION

"The right to a fair trial is a fundamental liberty." *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976). It is inferred from the Sixth Amendment to the United States Constitution which provides that

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

This amendment is, of course, binding upon the States through the due process clause of the Fourteenth Amendment. *See Duncan v. Louisiana*, 391 U.S. 145, 158–59, 88 S.Ct. 1444, 1452–53, 20 L.Ed.2d 491 (1968).

■ Because Norris has never alleged nor shown actual prejudice, we must determine whether the wearing of "Women Against Rape" buttons during his trial was "so inherently prejudicial as to pose an unacceptable threat" to the right to a fair trial. *Holbrook v. Flynn*, 475 U.S. 560, 572, 106 S.Ct. 1340, 1347–48, 89 L.Ed.2d 525 (1986). A courtroom practice or arrangement is inherently prejudicial if "an unacceptable risk is presented of impermissible factors coming into play." *Estelle*, 425 U.S. at 505, 96 S.Ct. at 1693. Because the buttons, which were donned before any evidence was introduced, conveyed an implied message encouraging the jury to find Norris guilty, and because the buttons were not subject to the constitutional safeguards of confrontation and cross-examination, they are clearly the sort of "impermissible factors" that courts must ensure receive no weight. Thus, we must decide whether the risk that the buttons did 'come into play' was an unacceptable one. To

decide whether that risk was unacceptable we specifically look at the relationship of exposure to the buttons to two facets of the right to a fair trial: the presumption of innocence and the right of confrontation and cross-examination.

### A.

■ Although not specifically articulated in the Constitution, the presumption of innocence is an integral part of the right to a fair trial. *Id.* at 503, 96 S.Ct. at 1692–93 (citing *Coffin v. United States*, 156 U.S. 432, 435, 15 S.Ct. 394, 395–96, 39 L.Ed. 481 (1895)). "To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process." *Id.* Thus, in remanding this case to the district court to hold an evidentiary hearing we noted that "[a] criminal defendant has the right to be tried in an atmosphere undisturbed by public passion." *Norris*, 878 F.2d at 1181 (citing *Irvin v. Dowd*, 366 U.S. 717, 728, 81 S.Ct. 1639, 1645, 6 L.Ed.2d 751 (1961)). Indeed, "[t]he constitutional safeguards relating to the integrity of the criminal process.... embrace the fundamental conception of a fair trial, and ... exclude influence or domination by either a hostile or friendly mob." *Cox v. Louisiana*, 379 U.S. 559, 562, 85 S.Ct. 476, 479–80, 13 L.Ed.2d 487 (1965). With this in mind, we focus on the fairness of Norris's trial in light of the evidence that some spectators wore "Women Against Rape" buttons both prior to and during trial.

■ After weighing all the competing evidence on the number of women present wearing buttons in and around the courtroom, the court concluded that three women wore the buttons at any given time either inside or outside the courtroom, including in the courthouse elevator. The evidentiary hearing was held more than six years after Norris's trial. Nonetheless, three of the six jurors who testified at the evidentiary hearing were aware of the buttons.

Although she claims not to have read their inscription, juror Lix saw women wearing the buttons during trial, and even rode the elevator with one such woman. Juror Lenhardt recalled seeing women wearing buttons around the courtroom entrance. While he also claims to be unable to remember their precise wording, he knew they opposed rape. Juror Green also saw the buttons, but claims to have never read them. A videotape of footage aired during a Billings newscast revealed that two of the three women sitting in the third row from the back of the courtroom wore the buttons during trial. The court found that these women were approximately sixteen feet from the nearest juror's chair. Taken together with the fact that the buttons were large, and highlighted the word "Rape," we believe these factors as found by the district court created "an unacceptable risk ... of impermissible factors coming into play." *Estelle*, 425 U.S. at 505, 96 S.Ct. at 1693 (citation omitted).[1]

In *Estelle*, the Court reasoned that the compelled wearing of prison attire impairs a defendant's right to a fair trial because it is a continual reminder to the jury that an accused who cannot post bail is incarcerated, thereby undermining the presumption of innocence. *See id.* at 504–05, 96 S.Ct. at 1693–94. Just as the compelled wearing of prison garb during trial can create an impermissible influence on the jury throughout trial, the buttons' message, which implied that Norris raped the complaining witness, constituted a continuing reminder that various spectators believed Norris's guilt before it was proven, eroding the presumption of innocence.[2] Moreover,

---

1. The court discredited Norris's testimony that there were eighteen to twenty women wearing buttons during the entire trial and that some of them served refreshments outside the courtroom. The court also discredited the testimony of Norris's friend, Wayman Glasgow, that there were ten to fifteen or more women wearing buttons. Accordingly, we do not consider that testimony.

2. While some inherently prejudicial practices may be permissible if necessary, *see Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (binding and gagging unruly defendant), the wearing of buttons cannot be so justified. The buttons served no compelling state interest.

the buttons' message was far more direct than that to be inferred from the wearing of prison attire, which has no communicative purpose. The women who wore buttons obviously intended to convey a message.[3] The trial judge, by seeking to protect their first amendment rights, indicated that he believed the women intended a message. So do we.

A decision of the West Virginia Supreme Court is informative regarding the wearing of buttons during trial. *State v. Franklin*, 327 S.E.2d 449 (W.Va.1985) involved a prosecution for driving under the influence of alcohol, resulting in death. During the trial, various spectators from an organization campaigning under the acronym MADD (Mothers Against Drunk Drivers) wore buttons inscribed with the capital letters MADD. Most jurors knew what the initials stood for. In reversing the conviction and remanding for a new trial, the court noted that the trial court's "cardinal failure ... was to take no action whatever against a predominant group of ordinary citizens who were tooth and nail opposed to any finding that the defendant was not guilty." *Id.* at 455.[4]

■ Here, based upon his belief that first amendment rights controlled, the state trial judge took no action against a group of citizens similarly strongly opposed to a finding that Norris was not guilty. Where fair trial rights are at significant risk, however, the first amendment rights of trial attendees can and must be curtailed at the courthouse door. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564, 100 S.Ct. 2814, 2820–21, 65 L.Ed.2d 973 (1980) (recognizing superiority of defendant's right to a fair trial over first amendment rights of nonparticipants). *See also* L. Tribe, American Constitutional Law 629 (1978) (suggesting that first amendment rights of access to court proceedings only limited by a defendant's right to a fair trial). *Cf. Estes v. Texas*, 381 U.S. 532, 539, 85 S.Ct. 1628, 1631, 14 L.Ed.2d 543 (1965) ("While maximum freedom must be allowed the press in carrying on [its] important function in a democratic society its exercise must necessarily be subject to the maintenance of absolute fairness in the judicial process."). The state trial judge erred in failing to recognize that the importance of a fair trial outweighs spectators' first amendment rights. By assuming that the spectators' rights to wear guilt suggestive buttons could only be curtailed upon a showing of imminent danger to life, the trial court erred. Rather, when balancing these competing rights the issue is not whether the buttons posed a serious and imminent threat to life, but whether they posed such a threat to a fair trial. If so, the first amendment interests must bow to the constitutional right to a fair trial. *See Levine v. United States District Court*, 764 F.2d 590, 597–98 (9th Cir.1985) (affirming the district court's decision that a prior restraint on speech was justified by a serious and imminent threat to a fair

3. In response to a question posed at the evidentiary hearing, Beverly Ross, a member of the National Organization for Women, explained that wearing the buttons "was a statement [they] were making," and that they "wanted to see some action taken ..." Transcript of December 18, 1989 Evidentiary Hearing, 108 ("Tr."). K. Johnson Hart, a Rape Task Force member, testified that the buttons were specifically obtained and used for Norris's proceedings. Tr. 91, 92. She conceded that the Task Force was "anxious for a conviction," Tr. 102, and that its members believed Norris guilty even before hearing the evidence. *Id.*

4. The only other case involving buttons which we have discovered is *State v. McNaught*, 238 Kan. 567, 713 P.2d 457 (1986). Although the court there upheld a conviction in the face of a fair trial challenge, *McNaught* is distinguishable.

The court found that the defendant failed to show he was actually prejudiced by the wearing of MADD and SADD (Students Against Drunk Drivers) buttons during his drunk driving trial. The decision focused attention on both the trial judge's discretion, and its conclusion that the jury was not prejudiced by the buttons, which it inferred from the jury's acquittal of the defendant on several of the criminal counts, including the only felony charge. *Id.* 713 P.2d at 468. Here, of course, no such inference is possible as Norris was convicted of all counts charged. Beyond this distinction, we do not believe that actual prejudice must be shown in such cases. It is the risk of prejudice that must be assessed to determine whether a practice is "so inherently prejudicial as to pose an unacceptable threat to [the] right to a fair trial." *Holbrook*, 475 U.S. at 572, 106 S.Ct. at 1347–48.

trial), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986). Here, the spectators' first amendment rights posed a serious and imminent threat to Norris's right to a fair trial.[5]

**B.**

Aside from impermissibly affecting the presumption of innocence, failing to exclude the buttons interfered with Norris's constitutional right to be accused from the "witness stand in a public courtroom where there is full judicial protection" of the rights of confrontation and cross-examination. *Turner v. Louisiana,* 379 U.S. 466, 472–73, 85 S.Ct. 546, 549–50, 13 L.Ed.2d 424 (1965). As we already acknowledged, "the presence of the women constituted a statement, not subject to cross-examination, that in the opinion of the members of the Rape Task Force the complaining witness had been raped by the defendant." *Norris,* 878 F.2d at 1183. Thus, though far more subtle than a direct accusation, the buttons' message was all the more dangerous precisely because it was not a formal accusation. Unlike the state's direct evidence, which could have been refuted by any manner of contrary testimony to be judged ultimately on the basis of each declarant's credibility, the buttons' informal accusation was not susceptible to traditional methods of refutation. Instead, the accusation stood unchallenged, lending credibility and weight to the state's case without being subject to the constitutional protections to which such evidence is ordinarily subjected. As in *Turner,* where the prosecution's two key witnesses, who were deputy sheriffs, had custody of the jury

during the entire trial, here, the environment created was one in which the credibility of a key witness against the defendant, the alleged victim, was likely bolstered by impermissible factors. Moreover, we see little difference between the buttons' endorsement of Norris's guilt here and "demonstrations in or near courts designed to influence" outcomes which have been judged impermissible. *Norris,* 878 F.2d at 1183 (citing *Cox v. Louisiana,* 379 U.S. 559, 562, 85 S.Ct. 476, 479–80, 13 L.Ed.2d 487 (1965)).

Thus, where the duel of credibility was all-important, the buttons created the "unacceptable risk that the jury's determination of [the complaining witness's] credibility was influenced by the courtroom showing of support by the Rape Task Force." *Norris,* 878 F.2d at 1182. Such a risk is unacceptable because "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of ... circumstances not adduced as proof at trial." *Taylor v. Kentucky,* 436 U.S. 478, 485, 98 S.Ct. 1930, 1934, 56 L.Ed.2d 468 (1978). Indeed, to sanction this sort of extrajudicial participation by trial attendees is not only antithetical to notions of due process but also risks converting the "courtroom proceedings [into] little more than a hollow formality." *Turner,* 379 U.S. at 473, 85 S.Ct. at 550.

**C.**

With respect to particular procedures which may affect a defendant's fair trial rights, the Supreme Court has recognized

**5.** Because we find these facts to create a serious and imminent threat to the right to a fair trial, we need not decide whether a less stringent standard than the "clear and present danger" formulation relied upon in court access cases should apply where spectators claim active, rather than passive, expressive rights.

Ordinarily, the cases implicating the conflict between the Sixth Amendment right to a fair trial and the First Amendment arise in the context of disputes over rights of access to courtroom proceedings, particularly with respect to the press. *See, e.g., Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606–07, 102 S.Ct. 2613, 2619–20, 73 L.Ed.2d 248 (1982) (because right of access to criminal trial is of constitutional stature, it can only be curtailed where

denial furthers some "compelling governmental interest and is narrowly tailored to serve that interest."); *Richmond Newspapers,* 448 U.S. at 555, 100 S.Ct. at 2816. In such cases, the individuals asserting first amendment rights claim the right to receive information. Here, some trial spectators sought a far broader and more active role: to make a statement about Norris's guilt. No case has been cited to us for the proposition that trial spectators have a constitutional right to advocate trial outcomes in the courthouse. In addition, spectators' rights are, nonetheless, subject to reasonable time, place, and manner restrictions. *Cf. Richmond Newspapers,* 448 U.S. at 581 n. 18, 100 S.Ct. at 2830 n. 18.

that the "actual impact of a particular practice on the judgment of jurors cannot always be fully determined." *Estelle*, 425 U.S. at 504, 96 S.Ct. at 1693. Here, we express the same fear. Any consideration of the buttons by the jurors would have been impermissible; but because we can never fully know the extent to which the buttons influenced any juror, we must review the trial judge's failure to exclude those wearing buttons, "based on reason, principle, and common human experience," to determine whether it involved an unacceptable risk of allowing such impermissible factors to come into play. *Id.* Doing so, we find the risk unconstitutionally great that these large and boldly highlighted buttons tainted Norris's right to a fair trial both by eroding the presumption of innocence and by allowing extraneous, prejudicial considerations to permeate the proceedings without subjecting them to the safeguards of confrontation and cross-examination.

This case is made all the more troubling by the relative ease with which the trial judge could have assured a fair trial. Here, while the risk of prejudice was profound, the burden of alleviating that risk was minimal. While we recognize that even some inherently prejudicial practices may be justified by their necessity, *supra* note 2, we hold that, under these circumstances, the exercise of first amendment rights by trial spectators is not that sort of necessity.

### CONCLUSION

Because the jurors were exposed to the buttons during the trial, we conclude that the risk that the buttons had an impact on the jurors is unacceptably high. Thus, we find that Robert Lee Norris did not receive a fair trial. The denial of the writ of habeas corpus is reversed, and the case is remanded to the district court with instructions to grant the writ if the state does not promptly retry Norris.

REVERSED and REMANDED.