977 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cornelio VALENCIA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roberto GARCIA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gabriel LOPEZ-RODRIGUEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellant,
v.
Gabriel LOPEZ-RODRIGUEZ, Roberto Garcia, Cornelio Valencia,
Defendants-Appellees.
 Nos. 90-10474, 90-10475, 90-10476 and 90-10549.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 11, 1992.
Decided Oct. 19, 1992.
 
 Before GOODWIN, FARRIS and POOLE, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendants Gabriel Lopez-Rodriguez and Cornelio Valencia were convicted of conspiracy and various narcotics offenses, and defendant Roberto Garcia was convicted of conspiracy to distribute narcotics. The defendants appeal their convictions on several different grounds, including judicial misconduct. The government also appeals the sentences imposed upon the defendants. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the convictions.
 
 
 3
 * During the summer of 1989, Sacramento police initiated an investigation into heroin and cocaine trafficking alleged to be occurring at two local apartments. The first, located at 2025 West El Camino Avenue, was rented to defendant Valencia and his wife Isela. In mid-July, the police observed defendant Lopez-Rodriguez at this apartment as he provided heroin to an undercover informant. The police also observed Lopez-Rodriguez engaging in drug transactions outside the apartment on two other occasions. On August 8, 1989, police searched the El Camino apartment pursuant to a warrant. They found heroin, materials for packaging and distributing the drug, a loaded Beretta semiautomatic handgun, and the keys to a Ford Fiesta automobile parked outside in an assigned space. The police also searched the car and found a Mac-10 automatic pistol, an ammunition clip for an assault rifle, approximately 739 grams of heroin, and 79 grams of cocaine.
 
 
 4
 The police also observed the second apartment for several days. They saw defendant Valencia and Lupercio Ramirez visit the apartment, which they believed was used as a dispatch center for the suspected narcotics distribution operation. The officers also noticed that a blue Toyota automobile used to make earlier narcotics deliveries to an undercover detective was parked near the apartment. The police also searched the second apartment on August 8. This apartment was sparsely furnished, containing $1,000 in U.S. currency, two pagers, a calculator, a notebook, and a telephone. The police recovered these items and arrested defendant Garcia inside the apartment. During the search of the apartment one of the pagers was activated and the telephone rang. After comparing the numbers for the active pager and the telephone to those used several days earlier by the undercover detective, the police concluded that Garcia was the seller of the narcotics.
 
 
 5
 The defendants were indicted by a federal grand jury on August 25, 1989. Garcia, Lopez-Rodriguez and Valencia were charged with conspiracy to distribute and to possess with intent to distribute heroin.[1] Lopez-Rodriguez and Valencia were also charged with possession with intent to distribute heroin and cocaine.[2] Valencia was also charged with making available his apartment for storage and distribution of narcotics,[3] and Garcia was also charged with distribution and aiding and abetting distribution of heroin.[4]
 
 
 6
 The trial lasted seventeen days. The jury convicted Garcia on the conspiracy charge, Lopez-Rodriguez and Valencia on the conspiracy charge and on charges of possession of heroin and cocaine with intent to distribute, and Valencia on the charge of using his apartment for manufacturing narcotics. The district court sentenced Lopez-Rodriguez to 189 months in federal custody, Valencia to 108 months in federal prison, and Garcia to 78 months of imprisonment.
 
 II
 
 7
 Judge Hauk made numerous statements during the trial and associated proceedings, which defendants assert deprived them of a fair trial.[5] The court told Garcia's counsel that he needed "to learn how to practice in my court or in any court" and that he "wo[uld no]t do it [his] way" because "it's stupid." Judge Hauk also told Garcia's lawyer that "he goes on forever" and to "shut up." In addition, Judge Hauk once threatened counsel with a night in prison for contempt of court after warning him not to "keep yelling at me like that."
 
 
 8
 Judge Hauk admonished Lopez-Rodriguez' lawyer to work harder:
 
 
 9
 Some day the U.S. Attorney and the public defender are going to learn they can work weekends and nights like I was working until ten o'clock Friday night, and I don't think it's important that I do your work for you.
 
 
 10
 He also instructed Lopez-Rodriguez' counsel on the proper use of the term "admitted" in connection with an evidentiary proffer and caustically admonished him that lawyers in federal court are not required to note exceptions. Judge Hauk also accused Lopez-Rodriguez' lawyer of making a "smart ass remark" and exclaimed that his actions were "irritat[ing]." Judge Hauk's manifestations of vexation also were not aimed solely at defense counsel: the record indicates that the Assistant United States Attorney was several times the recipient of acrimonious statements from the court.
 
 
 11
 These comments occurred at various times throughout the trial, and were ill-advised and intemperate. However, in substance they amounted only to an expression of impatience or unfamiliarity with the bar of the Eastern District of California. Standing alone, none of them provides cause for overturning the convictions in this case. See Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 780 (9th Cir.1990) (comments that relate to counsel's skill, as opposed to her good faith or integrity, do not generally require reversal unless prejudice to the defendant results). However, we find certain of Judge Hauk's comments more troubling:
 
 
 12
 THE COURT: You're out of your mind. You just irritate everybody. You're damned right I'm impatient with you guys. You're diddlers, and you're trying to use up all the time that you've got to make money upstairs for the public defender.
 
 
 13
 MR. STANIELS: I get paid a salary, your honor. It doesn't matter whether I'm in session or not.
 
 
 14
 THE COURT: Yeah, you do. You like to delay things. The defendants always like to delay. Sure, innocent acts into overt acts, as innocent as walking across the street on a spring day.
 
 
 15
 (emphasis added).
 
 
 16
 ....
 
 
 17
 MR. ROQUE: Well, I want to show ...
 
 
 18
 THE COURT: You got an alibi or something you're going to spring on us, or what?
 
 
 19
 ....
 
 
 20
 THE COURT: We don't run star chambers here. Let it all hang out. Let everybody know. The more you let them know, the more they want to plead guilty, sometimes.
 
 
 21
 (emphasis added). These comments were heard by the jury.
 
 III
 
 22
 Few principles are more basic to our law than that a defendant is entitled to a fair trial. Estelle v. Williams, 425 U.S. 501, 503 (1976) ("The right to a fair trial is a fundamental liberty."). As part of this right, the law acknowledges that a defendant is presumed innocent. Id. (citing Coffin v. United States, 156 U.S. 432, 435 (1895)); Norris v. Risley, 918 F.2d 828, 831 (9th Cir.1990). The court must remain sensitive to practices and influences that might undermine this presumption. See Norris, 918 F.2d at 831 (quoting Estelle, 425 U.S. at 503). Among these impermissible factors is judicial partisanship in the form of an expression of opinion as to a defendant's guilt. United States v. Eldred, 588 F.2d 746, 749 (9th Cir.1978) (per curiam). "Federal judges are not referees at prize-fights but functionaries of justice," Johnson v. United States, 333 U.S. 46, 54 (1948), but "[a] trial judge must constantly be aware of the sensitive role he plays in a jury trial and avoid even the appearance of advocacy or partiality." Eldred, 588 F.2d at 749. See also United States v. Clardy, 540 F.2d 439, 442-43 (9th Cir.) ("[I]t [is] incumbent upon the court to strive to preserve impartiality and to avoid allowing anything to undermine the defendant's presumption of innocence."), cert. denied, 429 U.S. 963 (1976).
 
 
 23
 Where judicial misconduct has occurred, we do not hesitate to reverse a conviction if the judge's comments left an "abiding impression" of advocacy for the government, United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989), or where they were "inherently prejudicial." See Norris, 918 F.2d at 830. "Inherent prejudice" will be found where the comments created an "unacceptable risk" that the forbidden factor of judicial partiality invaded the trial atmosphere, id., or a "pervasive climate of ... unfairness" and a chaotic environment. See United States v. DeLuca, 692 F.2d 1277, 1282 (9th Cir.1982). In this case, both of these problems pervaded the trial.
 
 
 24
 Judge Hauk's comments could easily have been interpreted as amounting to advocacy on behalf of the government.[6] His reference to defense counsel's desire to delay the proceedings was laced with the clear implication that the client had no other hope of convincing a jury of his innocence. The statement also intimated that his client lacked honest intentions. Judge Hauk's reference to the frequency with which defendants plea bargain likewise amounted to a prediction that more evidence would surely convince the jury that these defendants were guilty. Surely a reasonable juror could conclude that Judge Hauk thought these defendants guilty. Our conclusion in this regard is sufficient to require reversal, but we think that in combination with the remainder of Judge Hauk's comments and his caustic demeanor they also created a generally chaotic and confused atmosphere to the unconstitutional detriment of these defendants. Due process does not permit the judge to allow his courtroom to be converted into a shouting match where tempers and words are uncontrolled and routinely heated.
 
 
 25
 We are dismayed that we must again review a complaint concerning a district judge's courtroom behavior. However, we decline to allow the frequency with which we have done so affect our disposition of this case. The defendants in this case cannot be required to pay the price for a district judge's pattern of conduct just because we may be uncomfortable imposing the result such conduct causes.[7]
 
 IV
 
 26
 We must be careful neither to act out of exasperation nor fail to do what we are bound to do when fairness to the right of unsullied trial demands action on our part. The convictions are REVERSED.
 
 
 27
 FARRIS, Circuit Judge, dissenting.
 
 
 28
 Judge A. Andrew Hauk is a legend in his time. He is not now, nor do his records reflect that he has ever been, a model for one seeking an example of perfection in judicial temperament. This case is merely the latest in a long line of cases demonstrating his frequent impatience with counsel who appear before him. See, e.g., United States v. Milner, 962 F.2d 908 (9th Cir.1992) (improper voir dire comments); Kern v. Levolor Lorentzen, Inc., 899 F.2d 772 (9th Cir.1990) (numerous critical comments to counsel); United States v. Real Property, No. 90-56339, 1992 U.S.App. LEXIS 7478 (9th Cir. Apr. 8, 1992) (improper opinion based upon extrajudicial source); United States v. Reyes-Perez, No. 89-50448, 1992 U.S.App. LEXIS 4669 (9th Cir. Mar. 11, 1992) (improper Allen instruction); United States v. Aho, No. 90-50190, 1991 U.S.App. LEXIS 25056 (9th Cir. Oct. 25, 1991) (several inappropriate trial interventions).
 
 
 29
 The majority accurately reports Judge Hauk's conduct and language and yet I conclude that his courtroom should be a mandatory stop for all recent law school graduates. The visit would provide a unique opportunity to observe the jury system at its best. Jurors do not leave their brains at the courthouse steps. A jury, properly instructed, does not require a perfect environment for its deliberation to meet constitutional muster. "An impartial jury" is the requirement. U.S. Const. amend. IV.
 
 
 30
 The mistake of the novice is to focus on the conduct and language, rather than the effect of that conduct and language on the fairness of the proceeding. Judge Hauk's zeal may well have been excessive, but that would warrant reversal only if it affected, or may reasonably be deemed to have affected, the jury's fair and impartial deliberation. See United States v. Greene, 698 F.2d 1364, 1375 (9th Cir.1983).
 
 
 31
 "Cutting comments to counsel, particularly those relating to skill rather than good faith or integrity, will not generally mandate reversal." Kern, 899 F.2d at 780. In United States v. DeLuca, 692 F.2d 1277, 1282 (9th Cir.1982), we affirmed a defendant's conviction in spite of judicial bias, because the bias was against defendant's counsel, not the defendant. In United States v. Garcia, 924 F.2d 925, 927-28 (9th Cir.1991), we affirmed a conviction even though the trial judge ejected the defendant and his attorney during trial.
 
 
 32
 Judge Hauk may have offended some jurors, but his conduct neither confused nor mislead them. It did not remotely interfere with their proper function. His criticisms were uniformly and evenly applied to counsel for both sides. I agree that Judge Hauk made inappropriate comments. His lack of civility reflected his impatience with the trial pace and his frustration with members of an unfamiliar bar, but he did not personally attack defendants, nor did he offer his opinion as to their ultimate guilt or innocence.
 
 
 33
 Counsel in Southern California have become quite familiar with Judge Hauk and have learned what to expect. They, like counsel everywhere, know how to poll a jury. This jury was not polled. The failure to do so was not inadvertent. Polling would have put the effect of the conduct on record. The majority's reversal is based on its willingness to speculate on the effect of Judge Hauk's conduct. The record does not indicate a "pervasive climate of partiality or unfairness" toward any of the defendants. See DeLuca, 692 F.2d at 1282.
 
 
 34
 Unfortunately for litigants everywhere, it is the brilliant, clever, and manipulative (whether consciously or unconsciously) judge who creates the menace to be avoided. His or her skillful interference in the flow of trials has yielded debates that are the subject matter of many books. Even today, debate continues regarding certain celebrated trials (usually involving grave allegations of criminal conduct). All students of the law know of those trials and are familiar with the continuing critique. Mere mention of Nicola Sacco and Bartolomeo Venzetti, Julius and Ethel Rosenberg, and the Smith Act trials floods the memory with examples.
 
 
 35
 Nobody has or will ever write such a volume on an Andy Hauk trial. Judge Hauk is a bright, hardworking judge with a sound knowledge of the law. His fault is that he is impatient and frequently discourteous to counsel. His conduct may at times affect public opinion regarding the judiciary itself, but at least in this case, it did not intimidate counsel or interfere with the impartial role of the jury.
 
 
 36
 The record reflects that the accused received every benefit of the presumption of innocence in spite of substantial evidence of guilt. Beatrice Valencia Rodriguez had her case dismissed during the trial. The jury found Roberto Garcia innocent of one count of heroin distribution. This jury followed the court's instructions. It discharged its obligations in an exemplary manner. When the climate created by a judge permits that, it supports rather than thwarts the constitutional mandate. The convictions should be affirmed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 See 21 U.S.C. §§ 841(a)(1), 846
 
 
 [2]
 See 21 U.S.C. § 841(a)(1)
 
 
 [3]
 See 21 U.S.C. § 856
 
 
 [4]
 See 21 U.S.C. § 841(a)(1)
 
 
 [5]
 The defendants tender several other arguments in support of their effort to overturn their convictions. The government also contends that the court failed to comply with Fed.R.Crim.P. 32(c)(3)(D) during the sentencing process and incorrectly declined to consider certain prior offenses in calculating Lopez-Rodriguez' and Valencia's criminal history scores. Our disposition of this case does not require resolution of these arguments
 
 
 [6]
 We emphasize that the record contains no indication of actual bias on the part of Judge Hauk
 
 
 [7]
 Our recent decision in United States v. Milner, slip op. 4363 (9th Cir. Apr. 23, 1992), does not permit a more lenient treatment of improper judicial comments. The case is not factually similar. There, the same district judge implied that a defendant was an unusual security risk. He told a jury that U.S. Marshals sitting behind a defendant were necessary to protect the gallery, jury and judge from the defendant and his remarks suggested that the presence of the Marshals in the courtroom was necessary when defendants such as General Noriega were on trial, without clarifying that the remarks were not a reference to the particular defendant in that case. Importantly, the district judge gave a curative instruction that specifically cautioned the jury against drawing inferences of guilt from security precautions. No similar instruction was provided in this case