Richard **HARGETT,** Petitioner–Appellant,

v.

Michael **GIAMBRUNO,** Superintendent, Respondent–Appellee.

No. 05–2598–pr.

United States Court of Appeals, Second Circuit.

Sept. 2, 2008.

---

* The Honorable Debra Ann Livingston recused herself shortly prior to submission; therefore, the case is being decided by the remaining two judges. *See* 2d Cir. R. § 0.14(b) (interim rule).

Michael L. Hirschfeld, (Lawrence T. Kass, Jason M. Gonder, on the brief), Milbank, Tweed, Hadley & McCloy LLP, New York, NY, for Petitioner–Appellant.

Ashlyn Dannelly, Assistant Attorney General (Andrew M. Cuomo, Attorney General, Roseann B. Mackechnie, Deputy Solicitor General, on the brief), State of New York, New York, NY, for Respondent–Appellee.

PRESENT: JOSÉ A. CABRANES, ROSEMARY S. POOLER and ROBERT D. SACK, Circuit Judges.

## SUMMARY ORDER

Petitioner-appellant Richard Hargett appeals from a judgment of the District Court denying his petition, pursuant to 28 U.S.C. § 2254, for a writ of habeas corpus. Hargett contends that the state court's use of a blackboard to shield the identity of a testifying undercover officer ("the undercover") violated his Sixth Amendment right to a public trial. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief on a claim adjudicated on the merits in state court only if the adjudication was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The U.S. Supreme Court recently reiterated "that clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (internal quotation marks omitted).

In *Waller v. Georgia*, the Supreme Court set forth a four-part test for determining whether the closure of a courtroom violates a defendant's Sixth Amendment right to a public trial: "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader

than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure." 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). The parties do not dispute that this test governs Hargett's habeas petition.

Hargett contends that the state court's decision to "sequester" his family behind a chalkboard during the undercover's testimony violated *Waller* because it was (a) broader than necessary and (b) not supported by adequate findings. Assuming *arguendo* that the use of a chalkboard in this fashion constitutes a *form* of courtroom closure, instead of an *alternative* to closure, *but see Ayala v. Speckard*, 131 F.3d 62, 71 (2d Cir.1997) (describing as an "alternative" to closure the "plac[ement] of a screen between the witness and the courtroom spectators"), the state court's decision does not run afoul of the four-part test set forth in *Waller*.

The first *Waller* requirement is easily met in light of the state's "overriding interest," *Waller*, 467 U.S. at 48, in protecting an undercover officer and preserving his effectiveness. *See Rodriguez v. Miller*, 537 F.3d 102, 110 (2d Cir.2008) ("It is clear that the State has an 'overriding interest' in protecting the identity of its undercover officers.").

We conclude that the second requirement—that the closure be no broader than necessary—was also met: The court's interposition of the blackboard (1) was limited to the time when the undercover was testifying; (2) screened only certain individuals, not the public-at-large; and (3) enabled Hargett's family to hear the testimony from within the courtroom. *See id.* (approving of a "closure [that] was to last only for the duration of the [u]ndercover's testimony.").

Turning to the third requirement—that the trial court consider alternatives—we note that the state court considered and, at first, agreed to have Hargett's family members sit in the back of the courtroom while the undercover, in a hat and coat, testified. That alternative appeared reasonable to the state court at first, but it was later rejected when the court learned that Hargett's father and brother had both sold drugs while living in the same house as the family members Hargett sought to have admitted to the courtroom.

Finally, the state court made adequate findings to support the closure, in conformity with the fourth *Waller* requirement. At a hearing held by the state court to determine whether the courtroom should be closed during the undercover's testimony, the undercover testified that (1) he worked in the arrest area on a weekly basis, had other investigations pending in that area, and intended to return there in an undercover capacity in the future; (2) he took precautions to protect his identity—including not testifying in open court, not wearing a uniform, and using rear entrances to the courthouse—whenever he appeared in court; (3) he had been threatened a dozen times that "if I find out you're a cop[,] I'll kill you or have you killed;" and (4) on prior occasions where he had been identified as a police officer, the undercover operations had to be terminated. With respect to Hargett's family and friends being in the courtroom, the undercover testified that he had specific concerns about them because "they still live in the area that I currently work." Taken together, this evidence provides an adequate basis for the state court's decision to seat Hargett's family behind a blackboard during the undercover's testimony.

The state court's decision to interpose the blackboard between the undercover agent and members of Hargett's family was therefore neither contrary to nor an unreasonable application of *Waller*, and,

for that reason, Hargett is not entitled to habeas relief under the standard set forth in AEDPA.

Accordingly, we AFFIRM the judgment of the District Court.