**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MATHEW MUSLADIN,
*Petitioner-Appellant,*

v.

ANTHONY LAMARQUE, WARDEN,
*Respondent-Appellee.*

No. 03-16653

D.C. No.
CV-00-01998-JL

ORDER AND
OPINION

Appeal from the United States District Court
for the Northern District of California
James Larson, Magistrate, Presiding

Argued and Submitted
November 2, 2004—San Francisco, California

Filed October 21, 2005

Before: Stephen Reinhardt, David R. Thompson, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Reinhardt;
Dissent by Judge Thompson

14429

**COUNSEL**

Barry J. Portman, Federal Public Defender, and David W. Fermino, Assistant Federal Public Defender, San Francisco, California, for the petitioner-appellant.

Bill Lockyer, Attorney General of the State of California, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Glenn R. Pruden, Deputy Attorney General, and Gregory A. Ott, Deputy Attorney General, San Francisco, California, for the respondent-appellee.

---

## ORDER

The opinion and dissent filed on April 8, 2005, slip op. 4055, and appearing at 403 F.3d 1072 (9th Cir. 2005), is withdrawn. It may not be cited as precedent by or to this court or any district court of the Ninth Circuit. The clerk shall file the attached opinion and dissent in its place.

---

## OPINION

REINHARDT, Circuit Judge:

At a murder trial in which the central question is whether the defendant acted in self-defense, are a defendant's constitutional rights violated when spectators are permitted to wear buttons depicting the deceased individual? We conclude that under clearly established Supreme Court law such a practice interferes with the right to a fair trial by an impartial jury free from outside influences.

Mathew Musladin appeals the district court's denial of his petition for a writ of habeas corpus. He contends that the buttons worn by the deceased individual's family members at his trial created an unreasonable risk of impermissible factors coming into play, and that the state court was objectively unreasonable in denying this claim both on direct appeal and in the post-conviction proceedings. In light of clearly-established federal law set forth by the Supreme Court, and

persuasive authority from this court concerning the proper application of that law, we hold that the last-reasoned decision of the state court constituted an unreasonable application of Supreme Court law. Accordingly, we reverse the district court's denial of Musladin's petition and remand for issuance of the writ.

## I.  Factual Background and Procedural History

Musladin was charged in a California state court with first degree murder for the killing of Tom Studer, the fiance of his estranged wife Pamela. On May 13, 1994, Musladin came to the house where Pamela, Studer, and Pamela's brother Michael Albaugh lived in order to pick up his son for a scheduled weekend visit. Pamela testified that she and Musladin had an argument, and that Musladin pushed her to the ground. According to Pamela, when Studer and Albaugh came out of the house to assist her, Musladin reached into his car to grab a gun and fired two shots at Studer, killing him. Musladin contends, however, that after Pamela fell to the ground, Studer and Albaugh appeared, holding a gun and a machete respectively, and threatened him. Musladin asserted that, after seeing the weapons, he shot in the general direction of Studer out of fear for his own life. Accordingly, at trial Musladin argued perfect and imperfect self-defense. There is no dispute that Musladin fired the shot that killed Studer, although experts for both sides agree that the fatal shot was the result of a ricochet rather than a direct hit. Under Musladin's theory of defense, there was no crime and, thus, no victim.

During the 14-day trial, Studer's family sat in the front row of the gallery. On each of those 14 days, at least three members of the family wore buttons on their shirts with the deceased's photograph on them. According to declarations submitted by the defendant, the buttons were several inches in diameter and "very noticeable." Furthermore, the family members were seated in the row directly behind the prosecution and in clear view of the jury. Before opening statements,

counsel for Musladin requested that the trial judge instruct the family members to refrain from wearing the buttons in court, out of fear that the button's expressive content would influence the jury and prejudice Musladin's defense. The trial judge denied the request. Musladin was convicted of first degree murder and three other related offenses.

Musladin exhausted the available state procedures both on direct review and on post-conviction relief. The California Court of Appeal on direct appeal held, citing *Holbrook v. Flynn*, 475 U.S. 560, 570-71 (1986), that: "While we consider the wearing of photographs of victims in a courtroom to be an 'impermissible factor coming into play,' the practice of which should be discouraged, we do not believe the buttons in this case branded defendant 'with an unmistakable mark of guilt' in the eyes of the jurors." Musladin then filed a petition for a writ of habeas corpus in the District Court for the Northern District of California. He alleged, among other things, that the state court unreasonably applied clearly-established federal law in determining that his right to a fair trial was not violated by the family members' wearing of the buttons depicting the deceased. The district court denied the petition and this appeal followed.

## II.   The AEDPA Standard

Musladin's petition for habeas corpus is governed by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). Therefore, we may not grant habeas relief to the defendant unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Because state courts often issue "postcard" denials that offer no rationale for their dispositions, we determine whether the state court unreasonably applied federal law by looking to the "last reasoned decision of the state court as the basis of the state court's judgment." *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002).

In this case, we look to the opinion of the California Court of Appeal on direct appeal.

AEDPA limits the source of clearly-established federal law to Supreme Court cases. *See* 28 U.S.C. § 2254(d)(1). Nevertheless, we recognize that precedent from this court, or any other federal circuit court, has persuasive value in our effort to determine "whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and . . . what law is 'clearly established.' " *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000); *see also Robinson v. Ignacio*, 360 F.3d 1044, 1057 (9th Cir. 2004) ("When faced with a novel situation we may turn to our own precedent, as well as the decisions of other federal courts, in order to determine whether the state decision violates the general principles enunciated by the Supreme Court and is thus contrary to clearly established federal law."); *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003) ("[T]he objective reasonableness of a state court's application of Supreme Court precedent may be established by showing other circuits having similarly applied the precedent."); *Ouber v. Guarino*, 293 F.3d 19, 26 (1st Cir. 2002) ("[T]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness *vel non* of the state court's treatment of the contested issue." (internal quotation marks and citation omitted)); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999) ("[W]e do not believe federal habeas courts are precluded from considering the decisions of the inferior federal courts when evaluating whether the state court's application of the law was reasonable.") (en banc).

III.   Discussion

**[1]** "Due process requires that the accused receive a fair trial by an impartial jury free from outside influences." *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966). The Supreme Court has held that when the consequence of a courtroom

practice is that an "unacceptable risk is presented of impermissible factors coming into play," there is "inherent prejudice" to a defendant's constitutional right to a fair trial and reversal is required. *Flynn*, 475 U.S. at 570. In order to determine whether Musladin is entitled to federal habeas relief, we must therefore assess whether the buttons depicting the deceased individual worn by spectators at the trial posed a risk of impermissible factors coming into play that is similar to those previously found to exist in other circumstances, such as in compelling a criminal defendant to wear prison garb and shackles before the jury, *see Estelle v. Williams*, 425 U.S. 501 (1976), and in permitting spectators at a rape trial to wear anti-rape buttons, *see Norris v. Risley*, 918 F.2d 828 (9th Cir. 1990). Because we conclude that no significant difference exists between the circumstances of this case and the "unacceptable risks" found to exist in *Williams* and *Norris*, we hold that the state court unreasonably applied established Supreme Court law in denying Musladin relief.

   a.   Clearly Established Federal Law

The underlying federal law in this case — that certain practices attendant to the conduct of a trial can create such an "unacceptable risk of impermissible factors coming into play," as to be "inherently prejudicial" to a criminal defendant — was clearly established by the Supreme Court in *Estelle v. Williams*, 425 U.S. 501 (1976), and *Holbrook v. Flynn*, 475 U.S. 560 (1986). In *Williams*, the Court considered whether compelling a criminal defendant to appear at his jury trial dressed in prison clothing violated his right to a fair trial. *See Williams*, 425 U.S. at 503-06. The Court found that the compelled wearing of prison clothing constitutes a continuous impermissible reminder to the jury of the defendant's condition: an accused in custody who is unable to post bail. *Id.* at 505. The Court held that the influence of prison clothing, and the message it conveys to the jurors, impairs a defendant's presumption of innocence. *See id.* at 503. Noting these and other concerns, the Court concluded that because "[t]he

defendant's clothing is so likely to be a continuing influence throughout the trial . . . an unacceptable risk is presented of impermissible factors coming into play." *Id.* at 505.

In *Flynn*, the court reaffirmed its holding in *Williams* regarding the "inherent prejudice" of courtroom practices that create an "unacceptable risk of impermissible factors coming into play," but distinguished the case before it on the facts. The defendants in *Flynn* argued that the presence of four uniformed state troopers sitting in the front row directly behind them at trial led the jury to draw adverse inferences about them. *Flynn*, 475 U.S. at 563-64. The Court explained that there are certain "courtroom practices [that it] might find inherently prejudicial," but that the use of security officers to the extent involved did not fall into that category. *Id.* at 569. As the Court explained, the "inferences that a juror might reasonably draw from the officers' presence" in that case "need not be . . . that [the defendant] is particularly dangerous or culpable." *Id.* In distinguishing *Flynn* from *Williams*, the Court pointed out that the jury may not even have noticed that extra guards were being used in the trial, or most likely, drew no impermissible inference from their presence. The court stated, "[guards] are doubtless taken for granted so long as their numbers or weaponry do not suggest particular official concern or alarm." *Id.* at 569. The law concerning the "inherently prejudicial" nature of courtroom practices which convey an impermissible message, however, remained unchanged and clear.

**[2]** This court's decision in *Norris v. Risley*, 918 F.2d 828 (9th Cir. 1990), has persuasive value in an assessment of the meaning of the federal law that was clearly-established by *Williams* and *Flynn* and whether the state court's application of that law in the case before us is objectively unreasonable. Like the present case, *Norris* involved the application of the Supreme Court's "inherent prejudice" rule in assessing whether buttons worn by audience members during a trial created an "unacceptable risk of impermissible factor coming

into play." *See Norris*, 918 F.2d at 831-32. In *Norris*, the defendant was facing a criminal charge of rape. During the trial, several women sat in the spectator's gallery wearing buttons that read "Women Against Rape." *Id.* at 829. We noted that at any given time in Norris's trial, approximately three women in the audience would be wearing the anti-rape buttons. *Id.* at 831. Faced with these facts, we applied *Williams* and concluded that "[j]ust as the compelled wearing of prison garb during trial can create an impermissible influence on the jury, throughout trial the buttons' message . . . constituted a continuing reminder that various spectators believed Norris's guilt before it was proven, eroding the presumption of innoncence." *Id.* at 831. As we explained, because of the button's obvious communicative purpose, its impermissible message was far more clear and direct than that deemed unlawful in *Williams*:

> Thus, though far more subtle than a direct accusation, the buttons' message was all the more dangerous precisely because it was not a formal accusation. Unlike the state's direct evidence, which could have been refuted by any manner of contrary testimony to be judged ultimately on the basis of each declarant's credibility, the buttons' informal accusation was not susceptible to traditional methods of refutation. Instead, the accusation stood unchallenged, lending credibility and weight to the state's case without being subject to the constitutional protections to which such evidence is ordinarily subjected.

*Id.* at 833.

Our reliance on *Norris* is appropriate for another reason: the last reasoned state court opinion identified *Norris* as setting forth the operative law as announced by the Supreme Court, and the state court sought to apply *Norris* when reaching its determination. Indeed, the state court's unreasonable application of federal law lies in its misapplication of the *Wil-*

*liams* test, as it was explained in *Norris*, to the facts of this case.

The state court's decision to apply *Norris*, and ours to afford it persuasive weight when determining the federal law as established by *Williams*, are particularly significant in light of the striking factual similarities between *Norris* and the present case. *See Richardson v. Bowersox*, 188 F.3d 973, 978 (8th Cir. 1999) ("In determining whether a state court's decision involved an unreasonable application of clearly established federal law, it is appropriate to refer to decisions of the inferior federal courts in factually similar cases.").

   b.   Unreasonable Application of The Law

Although the state court identified the correct federal law to apply in adjudicating Musladin's claim, citing *Williams* for the controlling principle, and properly looking to our decision in *Norris* as a persuasive application of that federal law in a factually similar case, the state court was objectively unreasonable both in its ultimate conclusion and in the rationale it employed in denying Musladin's appeal. The California Court of Appeal justified its rejection of Musladin's claim as follows:

> [i]n contrast to the buttons in *Norris*, the message to be conveyed by the Studer family wearing buttons is less than clear. The simple photograph of Tom Studer was unlikely to have been taken as a sign of anything other than the normal grief occasioned by the loss of a family member. While we consider the wearing of photographs of victims in a courtroom to be an "impermissible factor coming into play," the practice of which should be discouraged, we do not believe the buttons in this case branded defendant "with an unmistakable mark of guilt" in the eyes of the jurors.

*People v. Musladin*, No. H015159 at 21-22 (Cal. Ct. App. Dec. 9, 1997) (unpublished decision) (citing *Flynn*, 475 U.S. at 570-71).

**[3]** By disposing of Musladin's claim in the above manner, the state court unreasonably applied federal law by imposing an additional and unduly burdensome requirement — demanding that the challenged practice cause the "brand[ing]" of the defendant with an "unmistakable mark of guilty" — even though the *Williams* test for finding "inherent prejudice" had already been met. The court specifically found "the wearing of photographs of victims in a courtroom *to be* an 'impermissible factor coming into play' " (emphasis added). Under Williams and Flynn, that finding, in itself establishes "inherent prejudice" and requires reversal.

*Williams* and *Flynn* cannot be distinguished. In the case before us, the state court found not only that an "unreasonable risk" existed that an impermissible factor *would* come into play, but that an impermissible factor actually *had* come into play. Nevertheless, after setting forth this finding, the state court added that, although the practice of wearing such buttons "should be discouraged," Musladin was not entitled to relief because "the buttons in this case [did not] brand[ ] defendant 'with an unmistakable mark of guilt' in the eyes of the jurors." The state court was unreasonable in imposing this additional requirement after it had concluded that the "inherent prejudice" elements had already been fully established.

The Supreme Court announced in *Williams* and *Flynn* that following a finding of an unacceptable risk of impermissible factors coming into play, no further showing is necessary because the practice is then deemed "inherently prejudicial." Here, the state court flouted that rule: it required that the challenged practice not only constitute an unacceptable risk of an impermissible factor coming into play but also that it "brand" the defendant with an "unmistakable mark of guilt." This additional test imposes too high and too unreasonable a bur-

den on defendants and is contrary to established Supreme Court law. *See Benn v. Lambert*, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002).[1]

[4] We note that the "branding" with an "unmistakable mark of guilt" language employed in *Flynn* constituted only a descriptive comment. *See Flynn*, 475 U.S. at 571 (quoting *Williams*, 425 U.S. at 518 (Brennan, J., dissenting)).[2] Both *Williams* and *Flynn* are clear as to the legal standard, and neither suggested that "branding" was necessary. Indeed, under the state court's interpretation, the holding in *Williams* would not survive its own test. The *Williams* Court never found, or even implied, that the compelled donning of prison clothing would "brand[ the] defendant 'with an unmistakable mark of guilt' in the eyes of the jurors." Rather, the court's concern

---

[1]This is not to say that a showing of actual prejudice has no role in a *Flynn* challenge. As we held in *Norris*, reversal is required if a defendant can prove *either* actual *or* inherent prejudice. *See Norris*, 918 F.2d at 828; *accord Woods*, 923 F.2d at 1457; *see also United States v. Halliburton*, 870 F.2d 557, 560 (9th Cir. 1989) ("If we find that the jurors' brief view of Halliburton in handcuffs was not inherently prejudicial, we must then determine whether appellant has carried his burden of affirmatively showing actual prejudice.").

[2]Justice Brennan's dissent in *Williams* was the first time a member of the Court employed the "branding" language. Justice Brennan explained that regardless of whether prison clothing was compelled or not, the wearing of those clothes adversely affects a defendant's presumption of innocence, because, among other things, the clothing "surely *tends* to brand him in the eyes of the jury with an unmistakable mark of guilt." *Williams*, 425 U.S. at 518 (Brennan, J., dissenting) (emphasis added). When it was repeated in *Flynn*, the majority had already dismissed the defendant's challenge, and was simply noting in the alternative that "[e]ven had the jurors been aware that the deployment of troopers was not common practice in Rhode Island, we cannot believe that the use of the four troopers tended to brand respondent in their eyes 'with an unmistakable mark of guilt.' " *Flynn*, 475 U.S. at 571 (quoting *Williams*, 425 U.S. at 518 (Brennan, J., dissenting)). *Flynn* never stated that in order to prevail the defendant was required to meet that standard. Rather, it may simply have been refuting the defendant's contention that the challenged practice had the described effect.

was directed purely at the clothes' role as a "constant reminder of the accused's condition" — a "continuing influence throughout the trial," principally because the requirement that defendants wear prison clothes "operates usually against only those who cannot post bail prior to trial." *Williams*, 425 U.S. at 504-06. At most, the *Williams* Court found that the shackling and prison clothes were "unmistakable indications of the need to separate a defendant from the community at large," not that they would "brand" the defendant with an "unmistakable mark of guilt." *Flynn*, 475 U.S. at 569, 571. Although a practice that brands a defendant as guilty would surely be sufficient to demonstrate "inherent prejudice" and require reversal, branding is not a necessary element of establishing such prejudice. The state court's imposition of the additional "branding" requirement was contrary to clearly established federal law and constituted an unreasonable application of that law.[3]

[5] Moreover, the finding by the California Court of Appeal goes beyond the finding that was held to require reversal in

---

[3]We have consistently granted relief in this circuit on *William-Flynn* grounds without requiring the defendant to show that the challenged practice "branded" him with "an unmistakable mark of guilt." *See, e.g.*, *Norris*, 918 F.2d at 831; *United States v. Olvera*, 30 F.3d 1195, 1198 (9th Cir. 1994) ("We conclude that [the challenged practice] posed an unacceptably high risk of influencing the jury's judgment in a manner that undermined the presumption of innocence."). Although we have found that proving a mark of unmistakable guilt is *sufficient* to establish prejudice, we have never held that it is *necessary*. To the contrary, we have noted that it may serve an alternative to the basic test, which remains the traditional standard by which we determine the existence of inherent prejudice. *See Williams v. Woodford*, 384 F.3d 567, 588 (9th Cir 2004) ("The Supreme Court has said that security measures at trial are inherently prejudicial when they 'tend[ ] to brand [the defendant] in [the jurors'] eyes with an unmistakable mark of guilt,' *or* when they create 'an unacceptable risk . . . of impermissible factors coming into play.' " (emphasis added) (internal citations omitted)). Thus, branding may be an alternative means of establishing a violation, but it is not an additional requirement to be imposed after the violation has already been established under the traditional *Williams-Flynn* standard.

*Norris*. The state court attempted to distinguish *Norris*, but *Norris* simply cannot reasonably be distinguished. The message conveyed in the present case is even stronger and more prejudicial than the one conveyed in *Norris*. The state court unreasonably justified its conclusion by stating that, when compared to the buttons worn by spectators in *Norris*, the "message conveyed by the Studer family wearing buttons is less than clear." This is simply not the case. Just as we held that the message sent by the anti-rape buttons was substantially more direct and clear than the message conveyed by the prison clothing in *Williams*, *see Norris*, 918 F.2d at 831, the message conveyed by the buttons depicting Studer in the case before us is substantially more direct and clear than that of the anti-rape buttons in *Norris*. In *Norris*, the buttons expressed the wearer's position against rape but did not specify the defendant or the victim. In this case, the buttons actually depicted the individual that the defendant was charged with murdering and represented him as the innocent party, or the victim. Here, the direct link between the buttons, the spectators wearing the buttons, the defendant, and the crime that the defendant allegedly committed was clear and unmistakable. The primary issue at Musladin's trial was whether it was the defendant or the deceased individual who was the aggressor. The buttons essentially "argue" that Studer was the innocent party and that the defendant was necessarily guilty; that the defendant, not Studer, was the initiator of the attack, and, thus, the perpetrator of a criminal act.

[6] The California court's belief that buttons depicting the deceased individual were "unlikely to have been taken as a sign of anything other than the normal grief occasioned by the loss of a family member" is even more incorrect as a matter of law than the view that interpreting the "Woman against Rape" buttons in *Norris* served no purpose other than women announcing a general statement against rape or expressing solidarity with, or support for, the rape victim in Norris's case.[4]

---

[4]Even if we concluded that a showing of solidarity was the primary effect of the buttons in *Norris* or the buttons worn by the deceased individ-

We did not excuse the wearing of the buttons on that ground in *Norris*, and it was objectively unreasonable in light of *Norris* for the state court to do so here. *See Norris*, 918 F.2d at 831. In both *Norris* and the case before us, the law requires the courts to look beyond the general sentiment a button reflects and to determine the specific message that the button conveys in light of the particular facts and issues before the jury. Doing so here, a reasonable jurist would be compelled to conclude that the buttons worn by Studer's family members conveyed the message that the defendant was guilty, just as the buttons worn by spectators in *Norris* did in that case.

## IV.   Conclusion

[7] In finding the wearing of buttons depicting the deceased individual to be an "impermissible factor coming into play," the state court reached the point at which the Supreme Court "went no further and concluded that the practice [at issue wa]s unconstitutional." *Flynn*, 475 U.S. at 568. Instead of granting relief, however, the state court, disregarding the fact that the central question was one of self-defense, unreasonably stated that the message conveyed through the wearing of the buttons in this case was not as clear as that conveyed by the anti-rape buttons in *Norris*. The state court then unreasonably held that "branding" the defendant with "an unmistakable mark of guilt" is necessary to grant relief even though it had already

---

ual's family in this case, such a showing would not be inconsistent with the conveying of a message about the defendant or his guilt. The Eleventh Circuit considered a similar question when a defendant, accused of killing a prison guard, challenged the presence of uniformed officers in the audience at his trial. In a post-*Flynn* decision, the Eleventh Circuit held that the officers' act of showing solidarity was inherently prejudicial to the defendant and granted the writ: "The officers in this case were there for one reason: they hoped to show solidarity with the killed correctional officer. In part, it appears that they wanted to communicate a message to the jury . . . [that they] wanted a conviction followed by the imposition of the death penalty. The jury could not help but receive the message." *Woods v. Dugger*, 923 F.2d 1454, 1459-60 (11th Cir. 1991).

found that "impermissible factors" had come into play before the jury. The state court did not simply engage in an incorrect application of Supreme Court law. Rather, its application of that law was contrary to the Court's established rule of law and was objectively unreasonable. Accordingly, we reverse the district court's denial of Musladin's petition for habeas corpus and remand for issuance of the writ. Musladin shall be released unless the state elects to re-try him within 90 days of the issuance of the mandate.

**Reversed and Remanded.**

---

THOMPSON, Senior Circuit Judge, dissenting:

I respectfully dissent.

A further statement of the facts seems appropriate. The petitioner, Musladin, and his wife, Pam, were married but separated at the time of the crimes of which Musladin was convicted. Pam was living at her mother's house with her brother Michael Albaugh, her fiancé Tom Studer, and Garrick Musladin, her then three-year-old son by Musladin. On the day of the shooting, Musladin went to the house to pick up Garrick for a scheduled weekend visitation.

The prosecutor presented evidence that an argument ensued between Pam and Musladin in the driveway, during which Musladin pushed Pam to the ground and reached for a gun in his car. Albaugh, standing in the driveway, yelled, "He's got a gun." Pam and Studer ran up the driveway. Musladin fired the gun at Pam and Studer, hitting Studer in the back of the shoulder. Pam ran into the house and out the back door. Studer fell to the ground and attempted to crawl underneath a truck in the garage. Musladin entered the garage and fired a second shot which ricocheted into Studer's head, killing him.

Musladin presented a different version of these events. He admitted shooting at Studer and killing him, but claimed perfect and imperfect self-defense. He testified that he believed Albaugh was carrying a machete and Studer a gun, and that he fired both shots out of fear for his life. After firing the shots, he got in his car and drove away.

Musladin was tried and convicted of first-degree murder of Studer and attempted murder of Pam.

I disagree with the majority's reliance upon our decision in *Norris v. Risley*, 918 F.2d 828 (9th Cir. 1990), for the application in this case of the rule of *Estelle v. Williams*, 452 U.S. 501 (1976). In *Williams*, the Court determined it to have been a violation of the right to a fair trial for the state to have compelled the defendant to wear prison clothing during his trial. *Id.* at 505. The Court held the prison clothing impaired the defendant's presumption of innocence. *Id.* In the present case, the state court permitted relatives of the deceased victim to wear buttons in the courtroom. The buttons disclosed only the deceased victim's picture, nothing else, and had nothing to do with the defendant.

Our *Norris* case was a case involving three women who wore buttons in the courtroom during the defendant's trial for rape, but that case is not controlling here. The buttons in *Norris* were two and one-half inches in diameter and bore the words "Women Against Rape." *Norris*, 918 F.2d at 830. "[T]he word 'rape' [was] underlined with a broad red stroke." *Id.* We stated: "[T]he buttons' message, which implied that Norris raped the complaining witness, constituted a continuing reminder that various spectators believed Norris's guilt before it was proven, eroding the presumption of innocence." *Id.* at 831.

Here, the buttons were three to four inches in diameter and, except for the deceased victim's picture, there was nothing else on them. The buttons conveyed no "message." As the

state appellate court stated, "The simple photograph of Tom Studer was unlikely to have been taken as a sign of anything other than the normal grief occasioned by the loss of a family member."

Further, it is difficult to distinguish this case from the routine situation of a deceased victim's family members, without buttons, sitting as a group in a courtroom during a trial. Jurors in such a trial surely would recognize the group for what it is. The addition of buttons worn by them showing only the victim's photograph would add little if anything to any possible risk of impermissibly prejudicing the jury.

Although the state appellate court in the present case commented that it "consider[ed] the wearing of the photographs of victims in a courtroom to be an 'impermissible factor coming into play,' the practice of which should be discouraged," quoting the "impermissible factor" language from *Williams*, 425 U.S. at 505 (which the Supreme Court also quoted in *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986)), the state court's "impermissble factor" comment is most reasonably understood as reflecting that court's view that buttons bearing a victim's photograph should not be worn in a courtroom. The comment did not change the buttons or make them something they were not. Moreover, the state court's additional comment that the buttons did not "brand[ ] defendant 'with an unmistakable mark of guilt' " is most reasonably understood as an explanation that the buttons were not "so inherently prejudicial as to pose an unacceptable threat to [the] right to a fair trial." *Holbrook*, 475 U.S. at 572.

In sum, I do not believe the decision by the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1). The state court's decision was not "contrary to" any such federal law, because the state court did not " 'appl[y] a rule that contradicts the governing law set forth

in [Supreme Court] cases,' " nor did the state court " 'confront[ ] a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrive[ ] at a result different from [Supreme Court] precedent.' " *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

Nor does the state court's decision abridge the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Lockyer*, 538 U.S. at 75 (internal citations omitted). Here, even if erroneous (which it was not), the California Court of Appeal's decision was not "objectively unreasonable."

The petitioner also asserts a number of other claims that he argues merit habeas relief. I would reject those claims as well, and thus would affirm the district court.