**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MATHEW MUSLADIN,
              *Petitioner-Appellant,*

v.

ANTHONY LAMARQUE, WARDEN,
              *Respondent-Appellee.*

No. 03-16653

D.C. No.
CV-00-01998-JL
Northern District
of California,
San Francisco

ORDER

Filed October 21, 2005

Before: Stephen Reinhardt, David R. Thompson, and
Marsha S. Berzon, Circuit Judges.

Order;
Dissent by Judge Kleinfeld;
Dissent by Judge Bea

---

### ORDER

The petition for panel rehearing is DENIED.

The full court was advised of the suggestion for rehearing en banc. A judge of the court requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc reconsideration. Fed. R. App. P. 35. The request for rehearing en banc is DENIED.

---

14417

KLEINFELD, Circuit Judge, with whom KOZINSKI, O'SCANNLAIN, TALLMAN, BYBEE, CALLAHAN, and BEA, Circuit Judges, join, dissenting from denial of rehearing en banc:

I respectfully dissent from the order denying rehearing en banc. We have effectively erased a statutory provision designed to restrict the power of the lower federal courts to overturn fully reviewed state court criminal convictions. And we have sharpened a serious circuit split.

Musladin was convicted of murder, and his conviction was upheld through direct and collateral review in the California courts. The California Court of Appeal carefully and reasonably applied the relevant precedents of the United States Supreme Court, but arguably deviated from the implications of a Ninth Circuit precedent.

In 1996, Congress adopted the Antiterrorism and Effective Death Penalty Act (AEDPA), amending the standard that federal courts must apply to state criminal convictions in habeas cases. The statute as amended says that we may grant a habeas petition if and only if the last reasoned state court decision "was contrary to, or involved an unreasonable application of, **clearly established** Federal law, **as determined by the Supreme Court of the United States**."[1] Our decision in this case has the practical effect of erasing the statutory phrase "as determined by the Supreme Court of the United States." Our tools for statutory construction are many,[2] but they do not include an eraser. Yet here we go, erasing the "clearly established" phrase and expanding the "as determined" phrase. The statute in nine states now says, as a practical matter, "contrary to, or involved an unreasonable application of, ~~clearly established~~ Federal law, as determined by the Supreme Court of

---

[1] 28 U.S.C. § 2254(d)(1) (emphasis added).

[2] *See* 2A Norman J. Singer, Sutherland on Statutes and Statutory Construction Part V, subpart A (6th ed. 2000).

the United States**, giving 'persuasive weight' to Ninth Circuit decisions that have applied Supreme Court decisions**.” We do not have that legislative authority.

The facts of this case and of the controlling precedents show just how clear our mistake is. Musladin, embroiled in a custody dispute with his estranged wife, murdered her new fiancé. At his trial, three members of the fiancé’s family sat in the spectator section of the courtroom wearing buttons with his picture on them. The buttons were two-to-four inch pictures of the victim but had no words. Musladin argued in his state court appeal and petition for review that the buttons denied him due process of law by eroding his presumption of innocence.

The California Court of Appeal concluded that the buttons contained no express message and were unlikely to signify “anything other than the normal grief occasioned by the loss of a family member.”[3] The California Court carefully examined *Estelle v. Williams*[4] and *Holbrook v. Flynn*[5] (the relevant Supreme Court decisions on) and Ninth Circuit cases. Though the Court of Appeal noted that button wearing should be “discouraged,” it held that the buttons did not amount to a denial of due process because they did not brand Musladin “with an unmistakable mark of guilt.”[6]

The statute is quite clear that our task on review of Musladin’s petition for a writ of habeas corpus is not to examine the California Court of Appeal decision as though we were a higher California court. Rather, we exercise a much more limited and deferential review to determine whether the California Court of Appeal acted contrary to “clearly established . . .

---

[3]*People v. Musladin*, No. H015159 at 21 (Cal. Ct. App. 1997).

[4]*Estelle v. Williams*, 425 U.S. 501 (1976).

[5]*Holbrook v. Flynn*, 475 U.S. 560 (1986).

[6]*People v. Musladin*, No. H015159 at 22.

Supreme Court" precedent or "unreasonabl[y]" applied it.[7] The only question for us is whether there is any Supreme Court authority that holds that silent signals of affiliation by spectators in a courtroom deny a defendant due process by eroding his presumption of innocence. The answer is that there is no such case. That should be the end of our inquiry.

The Supreme Court held in *Estelle v. Williams* that forcing a defendant to wear prison clothes at trial is "inherently prejudicial" and denies due process.[8] It held in *Holbrook v. Flynn* that the presence of several armed uniformed officers in the spectators' row directly behind the prisoner is not inherently prejudicial.[9] Neither of these cases holds that a spectator's symbol of affiliation or even opinion denies due process to a defendant.

Dressing the defendant in "prison garb," the *Estelle* problem,[10] is not analogous to spectators wearing buttons. First, prison garb is an unambiguous statement that the defendant is already a prisoner. Second, it is a communication to the jury of the government's determination—not a non-governmental spectator's—that the defendant belongs in jail. The buttons, by contrast, are ambiguous. They may mean "we really want this defendant punished because we care a lot about his victim," or they may merely mean "we care a lot about the victim," without an implication that the defendant is the proper person to be punished. Even more important, the spectators' buttons do not imply any determination by the government. Even if the buttons did imply that the spectators wanted the defendant punished, that would not be as corrosive of the presumption of innocence as the government saying "this defendant belongs in jail and he is already there because of our determination." Unlike the spectators' buttons in this case, the

---

[7]28 U.S.C. § 2254(d)(1).

[8]*Estelle*, 425 U.S. at 530 n.10.

[9]*Flynn*, 475 U.S. at 568-69.

[10]*Estelle*, 425 U.S. at 503.

prison garb in *Estelle* detracted from the presumption of innocence and from the defendant's dignity in the courtroom.[11]

The presence of the armed officers in the spectator section in *Flynn* more closely resembles the facts in our case than does the prison garb in *Estelle*. Both involve what the jury might perceive as communications from the spectators' section. But the Supreme Court held that the presence of the armed officers did *not* deprive the defendant of due process by corroding the presumption of innocence. And the armed officers were far more likely to do so than spectators not associated with the government because the officers represented the government and might have communicated its judgment that the defendant was dangerous. The Supreme Court held that the armed officers did *not* deny due process because of the "wider range of inferences that a juror might reasonably draw from the officers' presence."[12] The courtroom cannot be totally free of indications that the state thinks the defendant is guilty, for "jurors are quite aware that the defendant appearing before them did not arrive there by choice or happenstance."[13] With these two Supreme Court cases as bookends—showing what denies due process and what does not—the California courts were well within the bounds of reasonable interpretation in determining that this case is more like *Flynn*. The buttons with a picture of the dead fiancé did not say or obviously imply that the defendant killed him, just that the spectators wearing them cared about him.

So how did the panel majority manage to reach a different result in the face of Supreme Court decisions plainly leaving

---

[11]*See id.* at 518 (Brennan, J., dissenting) ("Identifiable prison garb robs an accused of the respect and dignity accorded other participants in a trial and constitutionally due the accused as an element of the presumption of innocence, and surely tends to brand him in the eyes of the jurors with an unmistakable mark of guilt.").

[12]*Flynn*, 475 U.S. at 569.

[13]*Id.* at 567.

room for the California courts' conclusion and a statute limiting us to Supreme Court decisions? The panel extended a *Ninth Circuit* case, not a *Supreme Court* case, *Norris v. Risley*.[14] But the statute says we cannot do that, with the express restriction "**as determined by the Supreme Court of the United States**."[15] The panel evades that restriction by holding that we give "persuasive weight" to Ninth Circuit cases when determining what is "clearly established Federal law, as determined by the Supreme Court." The panel's proposition means that we will grant writs based on precedents *other than* those of the Supreme Court. Ergo, the statutory restriction on our power is erased.

We held in *Norris*—before AEDPA—that the writ should be granted where several female spectators wore "Women Against Rape" buttons in the presence of jurors in "elevators, in the courtroom, on their way to and from the courtroom," and while "the women served refreshments outside the courtroom on behalf of the state."[16] California could properly decide the case at bar by distinguishing *Norris*, disagreeing with *Norris*, or in complete ignorance of *Norris*. Under AEDPA's restriction to Supreme Court decisions, we are obligated to deny the writ so long as the California decision was not contrary to or an unreasonable application of *Estelle* and *Flynn*. We cannot legitimately require the California courts to follow Ninth Circuit decisions on pain of our letting their prisoners out onto the street.

At least four of our sister circuits have expressly repudiated the error our panel has made. The Sixth Circuit, in *Mitzel v. Tate*, held that "[w]e may not look to the decisions of our circuit, or other courts of appeals, when 'deciding whether the state decision is contrary to, or an unreasonable application

---

[14]*Norris v. Risley*, 918 F.2d 828 (9th Cir. 1990).

[15]28 U.S.C. § 2254(d)(1) (emphasis added).

[16]*Norris*, 918 F.2d at 829.

of, clearly established federal law.' "[17] The Tenth Circuit in *Welch v. City of Pratt* held AEDPA "restricts the source of clearly established law to [the Supreme] Court's jurisprudence" and federal courts are therefore "no longer permitted to apply our own jurisprudence."[18] The Seventh Circuit likewise determined that "[f]ederal courts are no longer permitted to apply their own jurisprudence, but must look exclusively to Supreme Court case-law."[19]

The Fourth Circuit has also held that habeas relief may be granted only if "the state court decision is contrary to, or an unreasonable application of Supreme Court jurisprudence, and not circuit court precedent," so "any independent opinions we offer on the merits of the constitutional claims will have no determinative effect in the case before us, nor any precedential effect for state courts in future cases. At best, it constitutes a body of constitutional dicta."[20] The Fourth Circuit expressly rejects the notion that the lower federal courts need to provide "guidance" to the state courts on how to read the Supreme Court opinions. There is

> no reason to presume that state courts are in need of our guidance in interpreting and applying the controlling Supreme Court precedents. Our charge under the statute is only to determine whether the state court's adjudication of the claims before it was a reasonable one in light of the controlling Supreme Court law.[21]

---

[17]*Mitzel v. Tate*, 267 F.3d 524, 531 (6th Cir. 2001) (quoting *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

[18]*Welch v. City of Pratt, Kansas*, 214 F.3d 1219, 1222 (10th Cir. 2000) (internal citations and quotations omitted).

[19]*Bocian v. Godinez*, 101 F.3d 465, 471 (7th Cir. 1996).

[20]*Bell v. Jarvis*, 236 F.3d 149, 162 (4th Cir. 2000) (en banc).

[21]*Id.* at 162.

Arguably our panel did not create the circuit split *ex nihilo*. The panel notes that the Eighth Circuit in *Williams v. Bowersox*[22] held that the "diversity of opinion" among federal courts on a particular issue suggested that the state court did not unreasonably apply Supreme Court precedent.[23] But saying that the state court decision is *not* unreasonable because some federal courts have reached similar conclusions is not at all the same as saying that the state court decision *is* unreasonable because a circuit court has reached a contrary conclusion. The First Circuit in *Ouber v. Guarino*[24] and the Third Circuit in *Matteo v. Superintendent*[25] come much closer to supporting the panel's decision, but our panel is unique in how boldly it has flown in the face of the statutory restriction to Supreme Court decisions.

Those of us who have actually tried cases to juries have frequently observed how spectators communicate their feelings. This communication is an unavoidable consequence of the Constitutional guarantee of "public trial."[26] Sometimes there is a wall of brown or blue in the spectators' section, displaying that state or municipal police care a great deal about the case. Sometimes the courtroom is full of Hells Angels colors, signifying a concern for their brother in the defendant's chair. The local rape support center volunteers may crowd into the seats behind the prosecutor in a rape trial while the victim sits silently looking at the jurors through the entire trial. Defense lawyers round up family members to show support for the defendant by sitting behind the defense table.

There is nothing wrong with the jury knowing that people care about the case and the parties. Typically, the spectators

---

[22]*Williams v. Bowersox*, 340 F.3d 667 (8th Cir. 2003).

[23]*Id.* at 672.

[24]*Ouber v. Guarino*, 293 F.3d 19, 26 (1st Cir. 2002).

[25]*Matteo v. Superintendent*, 171 F.3d 877, 889-90 (3rd Cir. 1999).

[26]U.S. CONST. amend. VI.

arrange themselves like wedding guests choosing the bride's side or the groom's side, with those who favor a party sitting behind the lawyer for that side. In a public trial, the jury can always see that a lot of people care about one side or the other, or that no one cares except the parties and lawyers. Good lawyers often use this to their advantage, and good judges exercise prudence to avoid situations that might intimidate or prejudice the jury. Perhaps, as the California Court of Appeal implied, the trial judge in this case should have told the family members to remove their buttons. T-shirts with pictures of the victim would be difficult, but buttons are easy. There is no legitimate way for judges to prevent spectators in a public trial from showing that they care about the case and support one side or the other, even if only by where they sit and who they look at with sympathy or hostility. Public concern and public sympathy for one side or the other are part of what it means for a trial to be "public."

The panel's error is symptomatic of a deeper problem than its misapplication of Supreme Court precedent to spectators' photo buttons. Few things incumbent on powerful government officials are more fundamental than their duty to comply with the legal limitations on their power. Our panel has arrogated to our court power that we do not legitimately possess.

State judges take the same oath to uphold the Constitution that we do and perform the same work we do, construing Constitutional provisions and applying them to the facts before them. We do not sit as a state appellate court. One problem they sometimes have is deciding what to do about lower federal court decisions. Obviously they have to follow United States Supreme Court decisions, and they construe them as routinely as we do. Obviously they do not have to follow federal decisions on questions of state law.[27] Not quite as

---

[27] *See generally* 20 AM. JUR. 2D Courts § 225 (1965) (noting that state courts free to ignore a federal ruling on a state law); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938) (holding that federal courts are bound by state interpretations of state law); *Collier v. Bayer*, 408 F.3d 1279, 1283 n.4 (9th Cir. 2005) ("Federal courts of appeal[s] may not review state courts' interpretations of state law.").

obviously, but just as true, state courts understand that they are free to act contrary to circuit court holdings on questions of federal law.[28] Lower courts must follow the law laid down by higher courts. But we are not a higher court than the Supreme Court of California or the California Court of Appeal, or for that matter, California traffic courts. We are in a different judicial hierarchy.

Our panel's error creates uncertainty and inconsistency for the nine state court systems and nearly 20% of our nation's population within the Ninth Circuit. Must they follow our decisions when they think *our* decisions are contrary to or unreasonable applications of Supreme Court precedent? The statute tells them one thing, we tell them another, and the briefs they get will tell them both. Under the plain statutory language, state courts are free to ignore our decisions. But under the panel's decision, they must follow them. We have effectively turned ourselves into the supreme court of the nine states in our circuit. I therefore dissent.

---

BEA, Circuit Judge, with whom Circuit Judges KOZINSKI, O'SCANNLAIN, and KLEINFELD join, dissenting from the denial of rehearing en banc:

I join Judge Kleinfeld's dissent from the denial of rehearing en banc. I write separately to underscore that it was not an "unreasonable application of clearly established federal law" for the California Court of Appeal to deny habeas relief notwithstanding its determination that the wearing of victims'

---

[28]*See Arizonans for Official English v. Arizona*, 520 U.S. 43, 58 n.11 (1997); *see also Lockhart v. Fretwell*, 506 U.S. 364, 375-76 (1993) (Thomas, J., concurring) ("In our federal system, a state trial court's interpretation of federal law is no less authoritative than that of the federal court of appeals in whose circuit the trial court is located."); *People v. Williams*, 16 Cal.4th 153, 190 (1997) (recognizing that decisions of lower federal courts interpreting federal law are not binding on state courts).

photographs in a courtroom constitutes an "impermissible fac-
tor coming into play."

The panel opinion suggests that, once the California Court
of Appeal "specifically found 'the wearing of photographs of
victims in a courtroom *to be* an "impermissible factor coming
into play," ' " Musladin's conviction could not stand. *See
Musladin v. LaMarque*, ___ F.3d ___, ___ (9th Cir. 2005)
(panel's emphasis). The rationale offered in support of this
conclusion is that, "[u]nder *Williams* and *Flynn*," the finding
of an impermissible factor coming into play "in itself estab-
lishes 'inherent prejudice' and requires reversal." *Id.*

The panel opinion misconstrues *Williams* and *Flynn*. In
*Williams*, the Court established that putting a defendant on
trial in prison garb is constitutional error of the variety amena-
ble to harmless-error analysis. *See Williams*, 425 U.S. at 507-
09 (adopting the position of the Fifth Circuit that "the
harmless-error doctrine is applicable to this line of cases");
Charles Alan Wright et al., *Federal Practice and Procedure*
§ 855, at 477 & n.8 (3d ed. 2004). When the Court in *Flynn*
"reaffirmed its holding in *Williams*," *see Musladin*, ___ F.3d
at ___, it did not, of course, transform "courtroom arrange-
ments challenged as inherently prejudicial" into structural
errors, *Flynn*, 475 U.S. at 570. Rather, *Flynn* suggested that,
to obtain a conviction's reversal, a defendant must show "ac-
tual prejudice" even after successfully demonstrating that the
challenged courtroom arrangement was "inherently prejudi-
cial." *See id.* at 572 ("[I]f the challenged practice is not found
inherently prejudicial *and* if the defendant fails to show actual
prejudice, the inquiry is over." (emphasis added)). Under
*Flynn*, in other words, it is possible to have a situation that is
"inherently prejudicial" but not "*so* inherently prejudicial as
to pose an unacceptable threat to [a] defendant's right to a fair
trial." *Id.* (emphasis added).

Accordingly, it was a reasonable application of Supreme
Court precedent for the California Court of Appeal to deter-

mine that, although in its view the wearing of victims' photographs in a courtroom is inherently prejudicial, the button-wearing in this case did not actually deprive Musladin of his right to a fair trial.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2005 Thomson/West.